**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO.  1:05CR0297** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Judge John M. Manos** |
| | ) | |
| **LARRY CLAGGETT** | ) | |
| | ) | |
| **Defendant.** | ) | **ORDER** |

On June 22, 2005, an Indictment was filed charging Larry Claggett, Defendant, with one (1) count of violating 18 U.S.C. § 371 (conspiracy to commit bank robbery); two (2) counts of violating 18 U.S.C. § 2113(a) and 2 (bank robbery); five (5) counts of violating 18 U.S.C. § 2113(a) and (d) and 2 (armed bank robbery); and one (1) count of violating 18 U.S.C. § 1951(a) and 2 (obstructing commerce by robbery).  (Docket No. 12.)

On October 27, 2005, Claggett filed a motion to suppress.  (Docket No. 45.)  On November 04, 2005, the government filed a brief in opposition.  (Docket No. 46.)  On December 16, 2005, the government filed a supplemental response.  (Docket No. 55.)

On December 06, 2005, this case was referred to a United States Magistrate Judge for a report and recommendation.  (Docket No. 52.).  On December 09, 2005, an evidentiary hearing was held.  (Docket No. 53.)  On January 03, 2006, the Magistrate Judge issued a report and recommendation.  (Docket No. 58.).  In the report, the Magistrate Judge recommended that the

motion be denied.  On January 09, 2006, Claggett filed an objection to the report and recommendation on the ground that it was not supported by the evidence.  (Docket No. 60.)

For the following reasons, Claggett's motion to suppress (Docket No. 45) is **DENIED**.

## I.   FACTUAL BACKGROUND

On May 19, 2005, the Federal Bureau of Investigation (FBI) and the Cleveland Police Department (CPD) had Claggett and his partner under surveillance.  (Tr. at 27.)  He and his partner were followed to the Shaker Community Credit Union, which was then robbed.  Id.  As they exited the building, they were arrested with a gun and a bag of cash.  Id.  CPD detective John Hall conducted the arrest.  (Tr. at 28.)  As CPD detective Mike Connelly approached, he heard Detective Hall ask Claggett if he understood his rights given to him, although he did not hear the rights actually administered.  (Tr. at 6-7.)

Five minutes later, CPD detective Phillip Habeeb took custody of Claggett, walked him into a parking lot away from the other officers and civilians, and read him his Miranda rights. (Tr. at 28-29.)  Detective Habeeb then asked Claggett if he understood his rights.  (Tr. at 30.) Claggett indicated that he understood them and that he wanted to speak with the officers.  Id.

Claggett was then transferred by Detectives Connelly and Habeeb to the Fourth District police station.  (Tr. at 7.)  While en route, Detective Connelly read him his Miranda rights.  (Tr. at 8.)  Claggett indicated that he understood his rights and that he wanted to speak with the officers.  (Tr. at 31.)  According to Detective Connelly, Claggett appeared alert and coherent, did not appear to be under the influence of drugs or alcohol, and was never threatened.  (Tr. at 8-10.)

Upon arriving at the police station, Claggett was escorted into a room.  (Tr. at 32.)  SA Eric Rardain conducted the interview.  Prior to the interview, Detective Habeeb confirmed that

Claggett still wanted to speak with the officers. (Tr. at 34.) Claggett indicated that he did and that he had been through this before. (Tr. at 34, 53.) SA Rardain confirmed with Detective Connelly that Claggett had, in fact, been read his Miranda rights. (Tr. at 55, 67.)

SA Rardain took notes during the interview and prepared a summary report. (Tr. at 56-57.) He read the report to Claggett, who initialed each paragraph and signed his name at the end of the summary. (Tr. at 57-58.) The first paragraph of the report, initialed by Claggett, states:

> Mr. Claggett was read his Miranda rights by Lt. Mike Connelly (Cleveland), understood his rights, and agreed to make the following statement.

(Government's Ex. 1.) The last paragraph of the report, also initialed by Claggett, indicates that the statement was voluntary, that no promises had been made, and that he was not under the influence of drugs or alcohol at the time of the interview. Id.

The government also presented evidence reflecting Claggett's extensive experience with the criminal justice system. (Government's Ex. 4.)

## II. LAW AND ANALYSIS

A district court reviews a magistrate's report and recommendation on a motion to suppress *de novo*. 28 U.S.C. § 636(b)(1)(C); United States v. Curtis, 237 F.3d 598, 603 (6th Cir. 2001) (citing United States v. Raddatz, 447 U.S. 667, 674 (1980)).

The Fifth Amendment to the United States Constitution states that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Based on this right, the Supreme Court held in Miranda v. Arizona that a criminal suspect could not be subject to a custodial interrogation without first being informed of his right to remain silent and his right to counsel. 384 U.S. 436, 444-45 (1966). "Custodial interrogation" has been defined by the Supreme Court as "questioning initiated by law enforcement officers after a person has

been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444.  Thus, Miranda warnings are required in situations that are (1) custodial in nature and (2) involve an interrogation by law enforcement officers.  Id.

The parties do not dispute that the May 19, 2005 encounter was a custodial interrogation.[1]  Thus, the government must establish, by a preponderance of the evidence, that the defendant was informed of his Miranda rights, understood them, and voluntarily waived them.  Colorado v. Connelly, 479 U.S. 157, 168 (1986).

Here, the government has established that Claggett was read his Miranda rights at least twice prior to his interview with SA Rardain, once by Detective Habeeb, and once by Detective Connelly.  In both instances, Claggett indicated that he understood those rights and that he wanted to speak with the officers.  Although a short time (10-20 minutes) passed between the reading of his Miranda rights and his interview with SA Rardain, the Sixth Circuit has held that "re-warning" is not required simply because time has elapsed.  United States v. Weekley, 130 F.3d 747, 751 (6th Cir. 1997).

Moreover, Claggett initialed a statement affirming that he was read his Miranda rights, that his statement was voluntary, that no promises were made, and that he was not under the influence of drugs and alcohol.  No evidence suggests that Claggett was ever threatened, indicated a lack of understanding, or desired to remain silent and seek counsel.  Finally, his extensive familiarity with the criminal justice system in light of his repeated statements that he wanted to speak with the officers belie any claim that his statements were involuntary and

---

[1] In his motion, Claggett also sought the suppression of statements made during his June 22, 2005 proffer.  (Docket No. 45-1, 3.)  He has since withdrawn his objection and agrees that the matter is moot. (Docket No. 58-1, at 8; Tr. at 77-78.)

unknowing.  See United States v. Elkins, 300 F.3d 638, 648, n.7 (6th Cir. 2002).

Claggett argues that his rights were violated because his interviewing officer was not the same officer that administered the warnings.  However, there is no such requirement.  See United States v. Andaverde, 64 F.3d 1305, 1312-13 (9th Cir. 1995); Jarrell v. Balkom, 735 F.2d 1242, 1254 (11th Cir. 1984).  Claggett also emphasizes the fact that he was never asked to sign a written Miranda waiver.   However, a written waiver is not required.  See United States v. Miggins, 302 F.3d 384, 397 (6th Cir. 2002).  Indeed, in North Carolina v. Butler, the Supreme Court held that a Miranda waiver may be implied from the totality of the circumstances.  441 U.S. 369, 375-76 (1979).  Here, Claggett's familiarity with the criminal justice system, his repeated requests to speak with the officers after he was read his Miranda rights, his indication that he understood those rights, and his indication that his subsequent statements were voluntary, all support the conclusion that he had voluntarily and knowingly waived his Miranda rights.

### III.    CONCLUSION

Thus, the Court concludes that the government has established, by a preponderance of the evidence, that Claggett was informed of his Miranda rights, understood them, and voluntarily waived them.  For the foregoing reasons, his motion to suppress (Docket No. 45) is **DENIED**.

**IT IS SO ORDERED**

**Date: February 06, 2006**              */s/ John M. Manos*
                                                         **UNITED STATES DISTRICT JUDGE**